UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JAMES BAINES, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil No.: 1:19-cv-00509-LEW |
| | ) |
| SHENNA BELLOWS, in her official capacity as Secretary of State for the State of Maine, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFFS' EMERGENCY MOTION FOR PERMANENT INJUNCTION AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs James Baines, Christopher Lyons, Allen Esposito, William Sampson, Cody Blackburn, Bonnie Young and Libertarian Party of Maine ("LPME") (collectively, "Plaintiffs") respectfully move for a permanent injunction that remedies, to the extent possible, the constitutional violations the Court identified in its November 17, 2021 Order (Dkt. No. 76) ("Order") granting in part Plaintiffs' Motion for Summary Judgment (Dkt. No. 55). Specifically, Plaintiffs request that the Court enter an order that permanently enjoins Defendant Shenna Bellows ("the Secretary") from enforcing 21-A M.R.S. §§ 335(2) and 306[1] as applied to Plaintiffs and further directs the Secretary to:

1. Provide written notice to each voter who was unenrolled from LPME following the November 2018 general election that such unenrollment was unconstitutional and that the voter will be re-enrolled in LPME unless the voter has enrolled in another party or provides the Secretary with written notice that the voter does not want to be re-enrolled in LPME;

2. Re-enroll all voters who were unenrolled from LPME following the November 2018 general election and who have not enrolled in another party or provided written notice that they do not wish to be re-enrolled in LPME;

---

[1] Hereinafter all statutory citations are to the Maine Revised Statutes unless otherwise indicated.

3. Credit LPME with the number of enrolled members it had at the time of their unenrollment following the November 2018 general election, and treat LPME in all respects as a new ballot-qualified party for the 2022 and 2024 election cycles;

4. Allow unenrolled voters to sign the nomination petitions of candidates seeking access to LPME's primary election ballot, and accept their signatures as valid for purposes of satisfying the signature requirements prescribed by § 335(5);

5. Print new voter enrollment cards that list "Libertarian" as a choice under the "Party Affiliation" section of the card and distribute such cards to each city or county clerk's office in Maine with instructions that the cards be used in place of any old cards that do not include "Libertarian" as a party affiliation choice;

6. Modify Maine's Central Voter Registration ("CVR") system to include "Libertarian" in the drop-down menu listing party affiliation choices.

As set forth below, the foregoing relief is necessary to redress Plaintiffs' injuries because the near-total exclusion of LPME's candidates from Maine's primary and general election ballots in 2016 and 2018 unconstitutionally deprived LPME of its right to participate in those elections as a qualified party pursuant to § 303. The requested injunction would redress that injury by permitting LPME to participate as a qualified party in Maine's 2022 and 2024 elections – but this time free from the unconstitutional burdens imposed by § 335(2). The requested injunction would also redress Plaintiffs' injury arising from the unconstitutional unenrollment of LPME's members pursuant to § 306 by either re-enrolling them or crediting LPME with their re-enrollment. Such relief is warranted because it is narrowly tailored and seeks only to restore Plaintiffs, to the extent possible, to the position they were in prior to the violation of their constitutional rights.

Because the primary election petitioning period **starts on January 1, 2022 and ends on March 15, 2022**, *see* §§ 335(6),(8), and because Plaintiffs will suffer irreparable harm if they are not granted the foregoing relief before the petitioning period starts, Plaintiffs respectfully request that the Court establish an expedited briefing schedule for the instant motion, as follows:

Deadline for filing the Secretary's Opposition:     **December 22, 2021**

Deadline for filing Plaintiffs' Reply:     **December 23, 2021**

Plaintiffs also respectfully request that the Court rule on the motion by **December 31, 2021**.

Plaintiffs are mindful of the approaching holidays but submit that the proposed briefing schedule is reasonable under the circumstances.  The Court's November 17, 2021 Order resolved the merits of Plaintiffs' claims but concluded that "further proceedings" are necessary "to resolve the issue of remedy."  Order at 18.  Since then, Plaintiffs through counsel have engaged in extensive discussions with the Secretary, in an effort to obtain the Secretary's consent to the relief requested herein, but were notified just one day ago, on December 14, 2021, that the Secretary does not consent.  Accordingly, Plaintiffs have no alternative but to seek relief from the Court.

## MEMORANDUM OF LAW

On November 17, 2021, the Court entered its Order granting in part Plaintiffs' Motion for Summary Judgment.  The Court specifically held that "the party-member signature requirement" imposed by § 335(2) and the unenrollment requirement imposed by § 306 are "unconstitutional as applied to Plaintiffs."  Order at 41.  As the Court concluded, "[b]y limiting a party's ability to demonstrate local support to the restrictive manner set in § 335(2), Maine's purported grant of ballot access to qualified minor parties shows itself to be ballot access in name only."  Order at 30 (citation omitted).  Furthermore, "[t]he act of purging voter enrollment [pursuant to § 306] is a punishment in search of a wrong that would make Kafka blush."  Order at 40.

Plaintiffs will not burden the Court with extensive discussion of the reasons why the relief requested herein is necessary and appropriate to remedy the foregoing violations.  It suffices to say that such relief would, to the extent possible, redress the injuries that Plaintiffs suffered as a result of those violations by: (1) enabling LPME to participate in Maine's electoral process as a qualified party free, for the first time, from the unconstitutional burdens imposed by § 335(2), and; (2) re-enrolling the voters who were unconstitutionally unenrolled from LPME pursuant to § 306, unless the voters affirmatively indicate that they do not wish to be re-enrolled.  Plaintiffs thus seek nothing

more than restoration of the *status quo ex ante*, as it existed before the violation of their constitutional rights pursuant to §§ 335(2) and 306.

## ARGUMENT

To demonstrate that they are entitled to a permanent injunction, Plaintiffs must establish that: (1) they prevail on the merits; (2) they would suffer irreparable injury in the absence of injunctive relief; (3) their harm outweighs the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction. *See Asociacion de Educacion v. Garcia-Padilla*, 490 F.3d 1, 8 (1st Cir. 2007) (citation omitted); *see also CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008) (citations omitted). Each of these elements is plainly satisfied here.

***Plaintiffs prevail on the merits.*** It is beyond dispute that Plaintiffs have prevailed on the merits in this case. A prevailing party is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Poy v. Boutselis*, 352 F.3d 479, 487 (1st Cir. 2003) (citation omitted). Here, the Court expressly held that "§ 335(2) is unconstitutional as applied to Plaintiffs, in violation of the associational and equal protection rights protected by the First and Fourteenth Amendments of the United States Constitution," and that § 306 "is also unconstitutional as applied to Plaintiffs, in violation of the right to associate protected by the First and Fourteenth Amendments of the United States Constitution." Order at 41. Plaintiffs thus succeeded on two significant issues – the unconstitutionality of §§ 335(2) and 306 – and the Court has concluded that they are entitled to a remedy. Order at 18. Plaintiffs are therefore prevailing parties. *See Poy*, 352 F.3d at 487.

***Plaintiffs have demonstrated irreparable injury.*** It is also beyond dispute that Plaintiffs will suffer irreparable injury in the absence of injunctive relief. As the Supreme Court has explained, "[t]he loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury." *AM ex rel. Norris v. Cape Elizabeth Sch. Dist.*, 422 F. Supp. 3d 353, 367 (D. Me. 2019) (Walker, J.) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Court's holding that §§ 335(2) and 306 violate Plaintiffs' First Amendment rights as applied thus establishes that Plaintiffs will suffer irreparable harm in upcoming elections in the absence of injunctive relief. Order at 41.

***Plaintiffs' harm outweighs any harm to the Secretary***. The Court's Order vividly captures the harm that Plaintiffs have suffered due to the unconstitutional application of §§ 335(2) and 306 to them. Although Plaintiffs successfully completed the "Sisyphean effort" to qualify LPME for the ballot in 2016 and 2018, Order at 17, they were granted ballot access "in name only" due to the exclusion of their candidates from the primary, and thus the general election ballot, pursuant to § 335(2). Order at 30. Thereafter, LPME was disqualified and its 6,240 members involuntarily unenrolled, without notice, pursuant to § 306 – "a punishment in search of a wrong that would make Kafka blush." Order at 40. These harms, the Court found, amount to "the statutory equivalent of pushing rope uphill." Order at 40.

By contrast, the requested injunction will not harm the Secretary at all. The Secretary cannot credibly contend that the Secretary will be injured by LPME's participation as a ballot-qualified party in 2022 and 2024 – Plaintiffs earned that right pursuant to § 303 but they were unconstitutionally prevented from exercising it in 2016 and 2018. Moreover, any theoretical injury to the Secretary would not outweigh the harm that Plaintiffs suffered as a result of the near-total exclusion of their candidates from Maine's general election ballot during those two election cycles. *See* Order at 30 ("the "right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes")  (quoting *Williams v. Rhodes*, 393 U.S. 23, 31 (1968)). The requested injunction would do nothing more than redress that harm.

Nor will the re-enrollment of LPME's members cause the Secretary any cognizable harm. The Court correctly concluded that the administrative burden of retaining LPME members' enrollment status "is vanishingly small," Order at 38, and that "[t]he other supposed state interests asserted by the Secretary hardly merit discussion." Order at 38 n.27. Other courts that have addressed this issue are in unanimous agreement. Order at 38-39 (citing cases). There is simply no reason for the Secretary to insist that LPME's members remain unenrolled, when their re-enrollment is consistent with the express preference indicated on their voter enrollment cards and, moreover, their re-enrollment is critical to LPME's continuing viability under Maine law.

The additional relief that Plaintiffs request – inclusion of LPME on Maine's voter enrollment cards and CVR – will likewise impose little or no burden on the Secretary. But LPME's continued exclusion from these voter registration process will impose significant and unequal burdens on Plaintiffs, because it will deter voters from registering as Libertarian. And since Maine, unlike other states, "conditions party qualification on enrollment rather than petition signatures," Order at 37-38, any such obstacle to LPME's ability to enroll new voters on an equal basis with other ballot-qualified parties is especially significant.

The limited relief that Plaintiffs request is therefore eminently reasonable: it is narrowly tailored to restore Plaintiffs, to the extent possible, to the position they were in prior to the violation of their First and Fourteenth Amendment rights, and nothing more. Because the Secretary will not incur any cognizable harm if such relief is granted, this factor also weighs in Plaintiffs' favor.

***The public interest.*** Finally, the requested injunction will serve the public interest because "the public as a whole has a significant interest in … protection of First Amendment liberties." *Dayton Area Visually Impaired Persons v. Fisher*, 70 F. 3d 1474, 1490 (6th Cir. 1995). Thus, courts have widely held that "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *see also*

*New York Progress and Protection PAC v. Walsh*, 733 F.3d 483, 488 (2nd Cir. 2013) (same); *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (same); *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) (same); *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002) (same); *Connection Distributing Co. v. Reno*, 154 F. 3d 281, 288 (6th Cir. 1998) (same); *accord Sindicato Puertorriqueño v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012) ("[T]he suppression of political speech harms not only the speaker, but also the public to whom the speech would be directed…") (citation omitted). "The Government," on the other hand, "does not have an interest in the enforcement of an unconstitutional law." *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003) (quotation marks omitted). The public interest therefore also weighs strongly in favor of granting the requested injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for a Permanent Injunction.

Dated: December 15, 2021                    Respectfully submitted,

/s/John H. Branson

JOHN H. BRANSON*
BRANSON LAW OFFICE, P.A.
482 Congress Street, Suite 304
P.O. Box 7526
Portland, Maine 04112-7526
(207) 780-8611
jbranson@bransonlawoffice.com

OLIVER B. HALL
*Pro Hac Vice*
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
oliverhall@competitivedemocracy.org
(202) 248-9294

WILLIAM P. TEDARDS, JR.

7

*Pro Hac Vice*
1101 30th Street NW, Suite 500
Washington, DC 20007
BT@tedards.net
(202) 797-9135

*Counsel for Plaintiffs*
\**Counsel of Record*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of December, 2021, the foregoing document was filed using the Court's CM/ECF system, which will effect service upon all counsel of record.

/s/Oliver B. Hall
Oliver B. Hall