UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JAMES BAINES, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No.: 1:19-cv-00509-LEW |
| ) | |
| SHENNA BELLOWS, in her official ) | |
| capacity as Secretary of State for the ) | |
| State of Maine, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**AMENDED EMERGENCY MOTION FOR PERMANENT INJUNCTION**

In her Opposition to Plaintiffs' Emergency Motion for Permanent Injunction (Dkt. No. 83) ("Opp."), Defendant Shenna Bellows ("the Secretary") concedes that 21-A M.R.S. §§ 335(2) and 306 are unconstitutional as applied to Plaintiffs. Opp. at 4. The following points are therefore uncontested: (1) § 335(2) unconstitutionally excluded Plaintiff Libertarian Party of Maine's ("LPME") candidates from the general election ballot when it was a qualified party in 2016 and 2018; (2) Maine thus afforded Plaintiffs "ballot access in name only" during those election cycles, Order on Motions for Summary Judgment (Dkt. No. 76) ("Order") at 30, in violation of their First and Fourteenth Amendment rights; and (3) thereafter, the Secretary unconstitutionally unenrolled LPME's 6,240 members, again violating not only Plaintiffs' First and Fourteenth Amendment rights but also those of each unenrolled voter. To date, none of these violations has been remedied.

The Secretary nonetheless contends that Plaintiffs are not entitled to *any* injunctive relief because LPME is presently "at no risk of suffering the constitutional harms identified by the Court in its summary judgment order." Opp. at 4. The Secretary is incorrect. Plaintiffs are entitled to injunctive relief because LPME already has suffered those constitutional harms, in 2016 and 2018, and those harms will not be remedied in the absence of such relief.

As this Court correctly recognized, its order declaring §§ 335(2) and 306 unconstitutional did not provide Plaintiffs with a remedy for the violations of their rights, and "further proceedings" therefore would be necessary to resolve that issue.  Order at 18.  Accordingly, Plaintiffs have requested a remedy that is narrowly tailored to restore them, to the extent possible, to the position they were in before §§ 335(2) and 306 injured them.  Plaintiffs merely ask that LPME be treated as a qualified party for the next two election cycles – a right it earned pursuant to § 303 but was unconstitutionally denied pursuant to § 335(2) – and that the 6,240 voters who were unconstitutionally unenrolled from LPME be re-enrolled or credited to LPME as appropriate.

The remedy that Plaintiffs request is eminently reasonable and well within the Court's power to grant.  *See Griffin v. Burns*, 570 F. 2d 1065, 1079 (1st Cir. 1978) ("[I]n constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable.") (citation omitted).  Indeed, federal courts routinely grant such relief when states unconstitutionally infringe a party's right to participate in their electoral processes.  *See*, *e.g.*, *Green Party of Tennessee v. Hargett*, 7 F. Supp 3d 772, 791 (M.D. Tenn. 2014) (declaring ballot access statutes unconstitutional and ordering defendant to place plaintiff political parties on ballot "for elections for at least three years" from the one in which their rights were violated), *aff'd*, 791 F.3d 684 (6th Cir. 2015).  The Secretary's position, by contrast, is not reasonable.  Despite expressly acknowledging that §§ 335(2) and 306 caused Plaintiffs "irreparable injury" in 2016 and 2018, Opp. at 4, the Secretary would have this Court deny Plaintiffs any remedy whatsoever for that harm.  None of the points the Secretary asserts in support of this untenable position has any merit.  The Court should reject them and grant Plaintiffs the relief they requested and to which they are entitled.

### I.  Injunctive Relief Is Necessary to Remedy the Past Violations of Plaintiffs' First and Fourteenth Amendment Rights.

The Secretary erroneously asserts that injunctive relief is unnecessary because "LPME will not be a qualified party in 2022" and therefore it is not at imminent "risk of suffering the constitutional harms" that §§ 335(2) and 306 caused them in 2016 and 2018. Opp. at 4. But the Secretary disregards the fact that Plaintiffs are entitled to a remedy for the past violations of their First and Fourteenth Amendment rights. The Secretary's assertion that declaratory relief "could adequately address" the injuries that §§ 335(2) and 306 will cause Plaintiffs in future election cycles – even if true – is therefore irrelevant. Opp. at 5. It fails to address the basis for Plaintiffs' entitlement to injunctive relief.

Moreover, notwithstanding this Court's declaration that § 306 is unconstitutional as applied to Plaintiffs, the Secretary all but admits that the Secretary intends to involuntarily unenroll still more voters who have enrolled in LPME – and to do so on January 2, 2022. Opp. at 5. Injunctive relief in the form of an order enjoining the Secretary from enforcing § 306 against Plaintiffs is therefore urgently needed to prevent the Secretary from violating Plaintiffs' rights – and those of their voter-supporters – yet again. The declaratory relief this Court previously granted is plainly inadequate to protect Plaintiffs' rights.

According to the Secretary, Plaintiffs' proposed remedy has a "major flaw" in that it seeks to "exploit the very loophole" the Court rejected when it concluded that qualified parties need not be permitted to retain ballot access if they fail to comply with the 10,000-member threshold imposed by § 301(1)(E). Opp. 5-6. Not so. Plaintiffs do not contend that their compliance with § 303 "entitle[s] [them] to ballot access in *four* election cycles (2016, 2018, 2022 and 2024)," as the Secretary incorrectly asserts, Opp. 6 (emphasis original), but that it entitles them to ballot access in two election cycles free from the unconstitutional burdens imposed by § 335(2). As this Court has concluded, Maine afforded LPME ballot access "in name only" when Plaintiffs earned it pursuant to § 303 in 2016 and 2018. Order at 30. The appropriate remedy for that constitutional

violation is to grant LPME status as a qualified party in 2022 and 2024 and to enjoin the Secretary from enforcing § 335(2)'s party enrollment requirement against them. In the event that LPME fails to comply with § 301(1)(E)'s 10,000-member requirement in 2024, it would be disqualified pursuant to § 304 – but crucially, its members would not be unconstitutionally unenrolled pursuant to § 306. Thus, far from attempting to "exploit" a "loophole" in Maine law, Plaintiffs' proposed remedy is perfectly consistent with the Court's reasoning in upholding § 301(1)(E) but invalidating § 306. Order at 38 n.27.

By contrast, the Secretary's assertion that "declaratory relief" is "sufficient to protect [Plaintiffs'] rights" if LPME qualifies in future elections is contrary to this Court's reasoning. It does not even acknowledge this Court's conclusion – which the Secretary purports to accept, Opp. 4 – that the enforcement of §§ 335(2) and 306 in 2016 and 2018 violated Plaintiffs' rights.

## II.     The Balance of Hardships and Public Interest Favor an Injunction.

The Secretary insists that Plaintiffs are not entitled to an injunction granting LPME status as a qualified party in 2022 and 2024 because "LPME has not shown any current modicum of support among the public…." Opp. 7. But once again, the Secretary simply disregards the fact that LPME demonstrated the requisite support by enrolling more than 5,000 members pursuant to § 303, and that LPME was nevertheless unconstitutionally excluded from participating in the 2016 and 2018 general elections and thereafter unconstitutionally stripped of its 6,240 enrolled members. The Secretary's assertion that Plaintiffs seek relief that "go[es] well beyond" remedying these injuries thus fails to comport with reality. Opp. 8. Plaintiffs seek nothing more than to be restored, to the extent possible, to their position prior to the violation of their constitutional rights.

## III.    The Secretary's Remaining Objections Have No Merit.

The Secretary suggests that the injunctive relief that Plaintiffs request is "problematic" for three reasons. Opp. 8. None of them has any merit.

First, the Secretary complains that "there is no need" to allow LPME's candidates to obtain signatures from any qualified registered voter for purposes of satisfying the signature requirements imposed by § 335(2). Opp. 9. That is not so. The uncontested evidence demonstrates that eliminating the party enrollment requirement would alleviate the unconstitutional burdens that § 335(2) imposes. *See* Order at 11 & n.15 (citing evidence that Green Party candidate Lisa Savage easily satisfied Maine's ballot access requirements – in a single day – by unenrolling and running for office as an independent. Maine permits independents to obtain signatures from any qualified voter. *See* 21-A M.R.S. § 354(2). There is no reason why Maine should deny that same associational freedom to partisan candidates and Maine voters.

The Secretary cites to language from the district court's opinion in *Libertarian Party of Maine v. Diamond*, 799 F. Supp. 1 (D. Me. 1992), in an effort to suggest that Maine has a legitimate interest in prohibiting partisan voters from signing LPME candidates' nomination petitions to prevent "party raiding," Opp. 8-9, but the Secretary's purported concern should not be credited. Notably, the language on which the Secretary relies does not appear in the First Circuit's opinion affirming the decision in *Diamond*, 992 F.2d 365 (1st Cir. 1993), and for good reason. As the First Circuit has elsewhere explained, "when raiding has been recognized as a valid justification for a state election law, it has been in the context of *voter* challenges to election laws that inhibit registered voters' ability to invade another party's primary *without that party's consent.*" *Cool Moose Party v. State of Rhode Island*, 183 F.3d 80, 87-88 (1st Cir. 1999) (emphasis original) (citation omitted). Here, by contrast, as in *Cool Moose Party*, LPME "*wishes* to invite voters affiliated with other parties to participate in its primary election, [but] the State forbids the invitation without offering a plausible and constitutionally permissible explanation for the prohibition." *Id.* at 88 (footnote omitted).

5

Furthermore, unlike the plaintiffs in *Cool Moose Party*, LPME does not seek to allow voters enrolled in other parties to *vote* in its primary, but only to allow those voters *to sign nomination petitions* for candidates seeking to run in its primary. Therefore, even if the Secretary's asserted concerns with party raiding furthered a legitimate state interest – and they do not – merely allowing partisan voters to sign LPME candidates' nomination petitions poses no danger that LPME's primary could be raided as a result. Only LPME members could vote in LPME's primary, and thus they would retain sole power to select LPME's nominees.

<u>Second</u>, the Secretary insists nonetheless that any injunction against enforcement of the party enrollment requirement should "expire" after a period of time or when LPME reaches a certain size, Opp. 10, but that request also should be rejected. The Secretary has not articulated any legitimate state interest for prohibiting LPME candidates from obtaining signatures from voters whether they are unenrolled or enrolled in another party. Consequently there is no justification for the Secretary's request that the Court provide only temporary relief from this wholly unjustified prohibition.

Additionally, the Secretary's proposal that any such relief should expire when LPME meets an enrollment threshold of 10,000 members is contrary to law and cannot be reconciled with the evidence in the record. The party enrollment requirement cannot withstand constitutional scrutiny and that is true regardless of a political party's size. Moreover, the evidence shows that the party enrollment requirement is severely burdensome as applied to Green Party candidates, even though that party has more than 40,000 enrolled members. *See* Order at 11 & n.15. The Secretary's proposal is therefore not only unjustified by any legitimate state interest, but apparently intended to impose, at a later date, the very same unconstitutional burdens the Court has invalidated in this case.

Third, the Secretary asserts that "crediting" LPME with all 6,240 members who were unconstitutionally unenrolled is "unworkable" as a remedy for that violation. Opp. 10-11. But that is precisely the relief this Court granted to LPME in litigation that presaged the instant action. *See Libertarian Party of Maine v. Dunlap*, No. 2:16-cv-00002 (D. Me. 2016) (unpublished) ("Slip Op."). And when "pressed" at oral argument in that case, the Secretary was "candid" and "conceded that granting credit for previous enrollments … *would be workable*." Slip Op. at 31 (emphasis added). The Secretary's self-serving assertion to the contrary here therefore should be rejected.

*  *  *

Litigation must come to an end at some point. Plaintiffs have been laboring under Maine's unconstitutional statutory scheme at least since the 2016 election cycle, and this Court has now twice declared that statutory scheme in violation of their First and Fourteenth Amendment rights. The Secretary does not dispute the validity of that conclusion. Rather than working cooperatively with Plaintiffs to agree upon a remedy without the need to burden the Court with further motions practice, however, the Secretary has opposed each and every aspect of the relief that Plaintiffs request. But Plaintiffs are entitled to a remedy for the violation of their rights, and the remedy they request does nothing more than restore them, to the extent possible, to their position prior to the violation of their rights. The Court should grant the requested injunction.

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' Emergency Motion for a Permanent Injunction, the Court should grant the motion.

Dated: December 23, 2021                    Respectfully submitted,

/s/Oliver B. Hall

OLIVER B. HALL

7

*Pro Hac Vice*
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
oliverhall@competitivedemocracy.org
(202) 248-9294

JOHN H. BRANSON*
BRANSON LAW OFFICE, P.A.
482 Congress Street, Suite 304
P.O. Box 7526
Portland, Maine 04112-7526
(207) 780-8611
jbranson@bransonlawoffice.com


WILLIAM P. TEDARDS, JR.
*Pro Hac Vice*
1101 30th Street NW, Suite 500
Washington, DC 20007
BT@tedards.net
(202) 797-9135

*Counsel for Plaintiffs*
*\*Counsel of Record*

8

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of December, 2021, the foregoing document was filed using the Court's CM/ECF system, which will effect service upon all counsel of record.

/s/Oliver B. Hall
Oliver B. Hall