UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES BAINES *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19-cv-00509-LEW |
| | ) | |
| SHENNA BELLOWS, Secretary of | ) | |
| State for the State of Maine, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR PERMANENT INJUNCTION**

This matter comes before the Court on Plaintiffs' Amended Emergency Motion for

Permanent Injunction (ECF No. 81). In my November 11, 2021 Order on Motions for

Summary Judgment (ECF No. 76) (hereinafter "Order") I granted, in part, Plaintiffs'

Motion for Summary Judgment based on my conclusion that certain provisions of Maine's

election law[1] violated Plaintiffs' rights under the First and Fourteenth Amendments of the

U.S. Constitution.[2] I noted in the Order that the issue of remedy would await further

proceedings. Plaintiffs now seek injunctive relief to remedy the Constitutional violations.

They style their Motion as one for emergency relief because the 2022 election cycle in

Maine begins on January 2, 2022, the date on which candidates for political office can

---

[1] The grant of summary judgment was limited to the manner in which 21-A M.R.S. §§ 306 and 335(2) were applied by the Secretary to stymie Plaintiffs' political association with like-minded registered voters.

[2] As to Plaintiffs' other challenges, I found these insufficiently burdensome to violate Plaintiffs' constitutional rights and therefore denied in relevant part Plaintiff's Motion for Summary Judgment while granting in part Defendant's competing Motion for Summary Judgment.

begin collecting nomination signatures to secure spots in the primary election. I now grant,

in part, Plaintiffs' request for emergency injunctive relief, modify the requested relief in

certain respects, and limit relief to the 2022 election.

The parties are familiar with this case's statutory, historical, and procedural

background, which I do not recount here. In the Order, I determined that the provision of

Maine law forbidding candidates in ballot-qualified minor parties from demonstrating

popular support based on nomination signatures collected from within-district, unenrolled

voters, *see* 21-A M.R.S. § 335(2), deprives such candidates of their right of political

association with like-minded voters who are not adherents of another party. I also

determined that Defendant's "batch unenrollment" policy—under which the Secretary of

State (the "Secretary") automatically unenrolls a party's members when the party loses

ballot access for failure to enroll 10,000 voters—violated the associational rights of the

Libertarian Party of Maine (the "Party") where it retained in excess of 5,000 voters at the

time.

Through their emergency motion, Plaintiffs request that I enjoin the Secretary to do

the following:

1. Provide written notice to all batch-unenrolled party members to inform them that
they were unconstitutionally removed from the Party, which notice will also
state that these voters will be re-enrolled in the Party unless they are currently
enrolled in another party or provide the Secretary with written notice that they
do not wish to be re-enrolled;

2. Re-enroll the aforementioned voters unless they are currently enrolled in another
party or inform the Secretary that they do not wish to be re-enrolled.

3. Credit the Party with the number of party members it had prior to the batch
unenrollment following the 2018 general election, and treat the Party as newly

qualified for the ballot to ensure its participation in the 2022 and 2024 elections;

4. Allow qualified registered voters to sign nominating petitions for the Party's candidates;

5. Print and distribute to town clerks' offices new voter registration cards listing the Party as a qualified political party; and

6. Add the Party as an option for party enrollment in Maine's Central Voter Registration ("CVR") system.

Am. Emerg. Mot. 1-2.

## DISCUSSION

The Plaintiffs are entitled to permanent injunctive relief provided that they demonstrate (1) an irreparable injury; (2) the inadequacy of other legal remedies such as money damages; and (3) the existence of equitable injunctive relief that would balance hardships between the parties without (4) disserving the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008). A party seeking a permanent injunction also must succeed on the merits, as Plaintiffs have here.

Concerning irreparable injury, Maine election law has impeded, and continues to impede, Plaintiffs' access to the ballot. Maine's laws have restricted Plaintiffs' exercise of Constitutional liberties, which "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

As to the adequacy of legal remedies, the Sisyphean nature of Plaintiffs' experience caused them repeatedly to lose ground and momentum in their effort to establish a political movement, the kind of setback that (at least in this case) cannot be cured through the

transfer of funds from one litigant to the other. Nor would it be adequate to merely declare the unconstitutionality of Maine's election laws when the Secretary has neither the ability to guarantee an appropriate legislative solution nor the inclination to volunteer any administrative solution to the Party's exclusion from the ballot, *see* Def's Opp'n 6-7, even though there are means available to recalibrate the Party's status under law to something approximating a fair result.

The final two factors, balance of hardship and public interest, "merge when the [g]overnment is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The hardships for Plaintiffs have already been the subject of extended discussion in the Order and plainly warrant a remedy. On the other hand, the burden imposed on the Secretary by the narrow injunctive relief I award herein is comparatively small. While the realization of a freer and fairer electoral system may impose some administrative burdens on the government, those burdens do not outweigh the significant burden that certain provisions of Maine's election law have imposed on political expression, political association, and equal protection. Lastly, the remedy set out herein serves the public's interest in a fair election process.

Plaintiffs' varied requests are taken in turn. Keeping in mind the importance of awarding an injunction that is tailored to the particular balance of hardships in this case, without burdening the Secretary more than necessary to provide complete relief, *Sindi v. El-Moslimany*, 896 F.3d 1, 31 (1st Cir. 2018), and having in mind the fact that the start of the 2022 election season warrants immediate attention to some of Plaintiffs' requests, I have fashioned an emergency remedy to ensure the orderly administration of the 2022

election, without immediately resolving Plaintiffs' request concerning participation in the 2024 election.

## 1. Provision of written notice

Plaintiffs have persuaded me that it is appropriate and not unduly burdensome to the Secretary to require that the Secretary provide written notice to each voter who was unenrolled from the Party following the November 2018 general election. In my Order, I found the forced unenrollment to have violated the Party's and its supporters' constitutional right to associate. Equity demands that the Secretary act affirmatively to remedy this injury.

Accordingly, the Secretary shall provide written notice to the voters whose registration as a member of the Party was altered by the most recent batch unenrollment process, informing said voters that their unenrollment from the Party was unlawful and that they may re-enroll with the Party using an expedited process should they choose to do so. The Secretary shall further enclose with this written notice a preference-indication form, which the voters may return to the Secretary, indicating a preference to re-enroll in the Party, along with a pre-addressed and postage-paid envelope to facilitate the voter's response. The Secretary shall allow at least 45 days for voters to return the preference-indication form and shall allow reasonable exceptions for those persons for whom the deadline is too short, including but not limited to members of the armed forces and Maine-enrolled voters who overwinter in fairer climates or work overseas. In no event shall a voter be able to use this simplified method of re-enrollment after the date of the 2022 primary election. The Secretary shall clearly explain these deadlines in the written notice, and shall

explain that a failure to respond within the applicable deadline will mean that the voter's

current enrollment status (unenrolled or enrolled in a different party)[3] will not be changed.

Finally, the notice shall inform the voter that even if he does not utilize the simplified

process for re-enrollment in the Libertarian Party of Maine, he can always change his

existing enrollment by completing a voter registration card and delivering it to his town

office.

The Secretary is further ordered to mail the written notices within 30 days of this

Order and to file a status report with this Court that attaches a copy of the written notice

within the same 30-day period. The Secretary shall file a second status report within 90

days of this Order to update the Court and the Plaintiffs of the results of the written notice

with opportunity to re-enroll process.

## 2. Re-enrollment

Plaintiffs have persuaded me that it is equitable to require the Secretary to re-enroll

each voter whom the Secretary unenrolled from the Libertarian Party of Maine after the

November 2018 general election, but only if the voter in question returns a timely

preference-indication form stating the intention to re-enroll in the Libertarian Party of

Maine. I recognize that this measure of relief may be disappointing to the Party and to some

of its adherents given the indifferent manner by which the Secretary unenrolled voters from

the Party. However, two wrongs do not make a right, and the unilateral and unequivocal

---

[3] Some of the voters who receive the Secretary's notice already will have taken steps to re-enroll in the Libertarian Party of Maine. Assuming these voters do not respond to the notice, their enrollment in the Party would remain unchanged by this process.

re-enrollment of these voters without their consent would be no more respectful of their right to political self-determination than was the Secretary's batch unenrollment process.

### 3.  Credit 6,168 enrollments and order participation in two election cycles.[4]

Plaintiff's request for an automatic credit of more than 6,000 enrollments is denied. The appropriate enrollment figure, the one that best reflects actual public support for the Party, is better measured by the total number of current enrollees plus those voters who request re-enrollment in response to the written notice process outlined in the preceding sections and those voters who fill out and deliver updated voter registration cards to their respective town offices.

Even if the Party's eventual enrollment, once former members are afforded the opportunity to re-join, remains below either threshold for establishing a modicum of support under Maine election law, I nonetheless enjoin the Secretary to permit the Party to nominate candidates under its banner for the 2022 election cycle. Given the brief window of time remaining before the statutorily-prescribed January 2, 2022 deadline for qualifying as a new party, 21-A M.R.S. § 303(2), and the March 15, 2022 deadline for filing nomination petitions, 21-A M.R.S. § 335(8), requiring the Party to make an initial showing of support would almost certainly prevent its candidates from running under their chosen affiliation in the 2022 election. Equity and urgency demand that the Secretary permit the Party to operate as a ballot-qualified party in the 2022 election; any other outcome would

---

[4] The summary judgment record demonstrated that the Libertarian Party of Maine has 6,168 enrolled voters as of November 6, 2018. *See* Order 14. To my knowledge that is the closest approximation of enrollment figures as of the December 2018 batch unenrollment.

effectively prejudice the Party for Defendants' Constitutional violations.

I decline the Party's request to be permitted to nominate candidates in the 2024 election by way of an injunction. A permanent injunction is an "extraordinary remedy" that courts are to issue sparingly, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and Plaintiffs have not shown that such a remedy is warranted here. Just over two years remain before the nomination period for the 2024 election cycle, affording the Party ample time to qualify for ballot access in the manner prescribed by Maine law, and the political branches ample time to work out the kinks in Maine's ballot access framework. If future developments support the issuance of an injunction permitting the Party to contest the 2024 election, I can address the issue when it arises; but on the record before me today, I decline to issue such a sweeping order.

### 4. Nomination petition signatures

Plaintiffs request that "qualified registered voters" be permitted to sign the nominating petitions of Libertarian Party of Maine candidates. Pls.' Mot. 2. The Secretary objects that this would mean that Libertarian Party candidates could collect nominating signatures from voters enrolled in other parties, which would go beyond what I concluded was necessary in my Order and would be inconsistent with the hoary maxim that states have an interest in preventing "cross-over" interference in primaries by competing parties. Def's Opp'n 8-9 (citing *Libertarian Party of Maine v. Diamond*, 799 F. Supp. 1, 5 (D. Me. 1992)). *See also Clingman v. Beaver*, 544 U.S. 581, 596 (2005) (finding that "Oklahoma has an interest in preventing party raiding ...."). The Secretary's position is well-supported by precedent, and I therefore deny Plaintiffs' request for an injunction that

would enable their party candidates to seek nominating signatures from voters enrolled in other parties.

However, it is consistent with the logic of the Order on Motions for Summary Judgment that the Secretary be enjoined to allow Libertarian Party of Maine candidates to collect nominating signatures from both voters enrolled in their party and unenrolled voters. That much is hereby ordered.[5]

## 5. Revamped voter registration cards

Plaintiffs reasonably request that the Secretary be enjoined to print and issue new voter registration cards listing the Party. However, mindful of the administrative burden that such an injunction would impose on the Secretary and town clerks across Maine, I decline to issue such an order. Instead, for the present, and continuing through the 2022 general election regardless of the outcome of the notice and re-enrollment process, the Secretary shall instruct municipal registrars and clerks that voters are entitled to enroll in the Libertarian Party of Maine, and to require that registrars and clerks post notices to this effect wherever they post voter registration materials for public consumption. In the event the Secretary orders, designs, or otherwise procures for distribution new voter registration cards before the 2022 general election, the Secretary shall include the Libertarian Party of Maine among the other qualified parties in the Party Affiliation check-box enrollment section of the form.

---

[5] The Secretary observes that there should come a time when the candidates of a growing party lose the ability to draw support from unenrolled voters. Perhaps that is so. Nothing in my Order on Motions for Summary Judgment dictates otherwise, and I have not changed the status quo for major party candidates. However, I see no reason why this litigation demands that I should usurp the Legislature's or the Secretary's role by attempting to set the mark now.

**6. Addition of Libertarian Party of Maine to CVR**

Finally, I enjoin the Secretary to add the Party as an option in Maine's CVR, to better enable town clerks and state administrators to enroll voters in the Party. This minor software update imposes a minimal burden on state administrators, while making the future enrollment of Party members easier for both voters and the town officials who oversee voter registration.

CONCLUSION

Plaintiffs' Motion for Permanent Injunction (ECF No. 81) is GRANTED IN PART and DENIED IN PART. Emergency injunctive relief is awarded as set forth above.

SO ORDERED.

Dated this 31st day of December, 2021.

                              /s/ Lance E. Walker
                              UNITED STATES DISTRICT JUDGE