UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JAMES BAINES, CHRISTOPHER LYONS, ALLEN ESPOSITO, WILLIAM SAMPSON, CODY BLACKBURN, BONNIE YOUNG and LIBERTARIAN PARTY OF MAINE, INC., <br><br>Plaintiffs, <br><br>v. <br><br>SHENNA BELLOWS, in her official capacity as Secretary of State for the State of Maine, <br><br>Defendant. | Civil No. 1:19-cv-00509-LEW |

**PLAINTIFFS' REPLY TO SECRETARY OF STATE'S OPPOSITION TO PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**

The fundamental points demonstrating that the Libertarian Party of Maine and its co-Plaintiffs (collectively, "LPME") are entitled to relief for the 2024 election cycle are not in dispute. First, LPME earned the right under Maine law to participate as a ballot-qualified party in two successive election cycles when it complied with 21-A M.R.S. § 303, but it has not been permitted to do so due to the unconstitutional application of 21-A M.R.S. § 335(2), which afforded LPME "ballot access in name only" until the Court enjoined enforcement of that provision as applied to LPME in 2022. Order on Motions for Summary Judgment (ECF No. 76) ("SJ Order") at 29. Second, notwithstanding the relief this Court granted in its Order on Motion for Permanent Injunction (ECF No. 87) ("PI Order"), LPME lost approximately 95 percent of its members due to their unconstitutional unenrollment pursuant to 21-A M.R.S. § 306. Defendant Shenna Bellows ("the Secretary") nonetheless insists that LPME is not entitled to further relief that would redress these constitutional injuries. That position is untenable.

"Where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief" –

meaning, "to secure complete justice." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) (brackets, citations and quotation marks omitted). Further, in "any equity case, the nature of the violation determines the scope of the remedy." *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16 (1971); *see also Lynch v. Dukakis*, 719 F. 2d 504, 514 (1st Cir. 1983) ("the scope of injunctive relief is dictated by the extent of the violation established….") (citation omitted). Here, to secure complete justice the scope of the remedy must include granting LPME ballot access in two successive election cycles – 2022 and 2024 – and a meaningful opportunity to re-enroll the 6,168 members that were unconstitutionally unenrolled.

The Secretary does not contend that the relief granted LPME thus far is sufficient to remedy the injuries it sustained pursuant to 21-A M.R.S. §§ 335(2) and 306, nor could she. LPME has not been permitted to participate in two successive election cycles, free from the unconstitutional burdens imposed by 21-A M.R.S. § 335(2), as it is entitled to do pursuant to 21-A M.R.S. § 303. Further, the Secretary concedes that the relief granted from 21-A M.R.S. § 306 resulted in the re-enrollment of only 317 LPME members, or 5.14 percent of the voters who were unconstitutionally unenrolled. Sec. Opp. at 4.

Despite her failure to address these points – which are dispositive under *Albermarle Paper Co.* and *Lynch* – the Secretary contends that it is "time to put an end to this matter," *id.* at 6, and suggests that LPME seeks to "relitigate" issues that the Court resolved in its PI Order. *Id.* at 1. The Secretary is incorrect. The Court did not decide whether additional relief would be warranted for the 2024 election cycle, but expressly reserved judgment on that issue. PI Order at 8 ("If future developments support the issuance of an injunction permitting the Party to contest the 2024 election, I can address the issue when it arises.") The Court reasoned that there was "just over two years" before the 2024 election cycle began, which was "ample time" for the Legislature to enact remedial legislation and for LPME to qualify as a new party. *Id.*

As LPME has explained, developments since the Court entered its PI Order demonstrate that further relief is warranted. There is now slightly more than one year – 15 months – before the 2024 election cycle begins, and as the Secretary concedes, the Legislature has not enacted remedial legislation. Sec. Opp. at 6 n.2. Further, the postal mail re-enrollment procedure that the Secretary administered, which resulted in the re-enrollment of just 5.14 percent of LPME's former members, manifestly falls short of securing complete justice for the constitutional injury that LPME incurred pursuant to 21-A M.R.S. § 306. *Id.* at 4. According to the Secretary, this suggests that LPME's former members "have little interest" in continuing their association with LPME, *id.* at 7, but such speculation contradicts the facts. The Secretary admits that 1,187 LPME members never even received notice of their opportunity to re-enroll, *id.* at 4 n.1, which is just one factor contributing to the notoriously low response rate associated with postal mailings. A 5 percent re-enrollment rate thus indicates that the procedure was inadequate to remedy the harm – not that 95 percent of LPME's former members have *sub silentio* disavowed their preferred political affiliation.[1]

Because the Secretary cannot address the only issue before the Court – whether the scope of relief granted thus far is commensurate with the harm incurred – the Secretary instead devotes her discussion to attacking LPME itself. None of this is relevant. LPME is entitled to complete justice for the constitutional injuries it sustained regardless of the Secretary's opinions with respect to its current prospects. *See Albermarle Paper Co.*, 422 U.S. at 418; *see also Lynch*, 719 F. 2d at 514.

Moreover, the Secretary's attack on LPME disregards the fact that LPME's modest membership at present is a direct result of the harm it incurred under Maine's unconstitutional statutory scheme. For example, LPME increased its membership by approximately 25 percent

---

[1] The relief that LPME requested – a procedure that provided for the re-enrollment of LPME members, consistent with the preference indicated on their enrollment cards, unless they opted out, Order (ECF No. 41) at 2 – undoubtedly would have produced a greater rate of re-enrollment than the opt-in procedure that the Secretary administered.

3

between 2016 and 2018, when its 6,168 members were unconstitutionally unenrolled – a robust growth rate that far outpaces that of any other party in Maine. Similarly, the Secretary disparages LPME for failing to qualify its candidates for the 2022 general election ballot, Sec. Opp. at 6-7, but disregards the fact that LPME did not become ballot-qualified until the Court entered its PI Order on December 31, 2021 – the day before the 2022 petitioning period started. Although the Court entered its order expeditiously, it is hardly surprising that a new party that had recently been forced "to start over from square zero" was unable to bounce back immediately. SJ Order at 35.

In any event, the Secretary's assertion that LPME "is now in almost precisely the same position as it was" prior to the unconstitutional unenrollment of its members is simply false. Sec. Opp. at 8. When its members were unconstitutionally unenrolled, LPME had 6,168 members. SJ Order at 14. Now it has 833. Sec. Opp. at 4. Given that LPME cannot obtain permanent status as a ballot-qualified party by virtue of its membership until it enrolls 10,000 members, *see* 21-A M.R.S. § 303(1)(E), the ongoing injury that LPME sustained from being returned to square zero is self-evident. Before the unconstitutional unenrollment of its members, LPME was less than 4,000 members from achieving permanent status as a ballot-qualified party, but now it is more than 9,000 members from that all-important threshold.

According to the Secretary, the fact that LPME lacks the funds to mount another $100,000-plus enrollment drive "is not a basis to award additional relief," Sec. Opp. at 8, but that misses the point. LPME earned the right to ballot-qualified status in two successive election cycles, free from the unconstitutional burdens imposed by Maine's statutory scheme, when it enrolled more than 5,000 members pursuant to 21-A M.R.S. § 303. The 2022 election cycle was the first time it was afforded that right, and it is therefore entitled under Maine law to ballot-qualified status in 2024 as well. The Secretary's assertion that LPME "participated" in the 2016 and 2018 election cycles does not change that fact, Sec. Opp. at 1, because as the Secretary well knows, LPME was allowed

4

"ballot access in name only" in those elections due to the unconstitutional application of 21-A M.R.S. § 335(2). SJ Order at 30.

The Secretary asserts that the relief LPME requests – ballot-qualified status in 2024 – is "likely to prove meaningless" because the Secretary believes LPME will not run candidates in that election, Sec. Opp. at 8, but this too misses the point. LPME earned the right to that relief when it complied with 21-A M.R.S. § 303, and the Secretary's pessimism is no basis for denying it. Furthermore, the Secretary is once again contradicted by the facts. 2024 is a presidential election year, and Libertarian Party presidential candidates have appeared on the ballot in all 50 states – including Maine – six times, most recently in 2020 and 2016. *See* Federal Election Commission, *Election Results*, available at https://www.fec.gov/introduction-campaign-finance/election-and-voting-information/ (accessed September 29, 2022). LPME most certainly intends to do so again in 2024.

The Secretary next asserts that LPME is not entitled to ballot-qualified status in 2024, "even as redress for a constitutional injury," because this case no longer arises "in an emergency context." Sec. Opp. at 9. The Secretary is incorrect for the reasons previously stated. When LPME qualified as a party pursuant to 21-A M.R.S. § 303, thus entitling it to ballot access in two successive election cycles, it was afforded "ballot access in name only." SJ Order at 30. The proper scope of relief for that injury is to grant LPME ballot access in two successive election cycles now – in 2022 and in 2024. *See Albermarle Paper Co.*, 422 U.S. at 418; *see also Lynch*, 719 F. 2d at 514. Additionally, contrary to the Secretary's purported concern for "cluttered" ballots, Sec. Opp. at 9, the facts prove that Maine has never had an overcrowded ballot. Decl. of R. Winger (ECF No. 55-5) at ¶¶ 8-10. The inclusion of LPME on the ballot in 2024 will not change that.

Finally, the Secretary's assertion that the Court's final judgment need not include "declarations that 21-A M.R.S. § 306 and § 335(2) are unconstitutional as applied to LPME" is

contrary to black letter law. The explicit purpose of a final judgment is to "adjudicat[e] all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Here, the Court has expressly held that "[t]he party-member signature requirement of § 335(2) is unconstitutional as applied to Plaintiffs," and that "[t]he Secretary's practice of forcibly disaffiliating members of disqualified political parties is also unconstitutional as applied to Plaintiffs." SJ Order at 41. The Court's final judgment should reflect those holdings.

Entry of a final judgment that correctly reflects the Court's holdings is especially warranted given the Secretary's announcement that she intends to "remove LPME from future printings of the voter registration cards and from the CVR drop-down menu for qualified parties" during any election year in which it does not retain its status as a qualified party. Sec. Opp. at 5-6. Nothing in the Court's SJ Order supports the Secretary's suggestion that the Court intended to limit the relief it granted in this manner. SJ Order at 38-40. On the contrary, the Court observed that "the potential costs of simply retaining enrollment lists for a previously qualified and continuously organized party is vanishingly small, particularly in light of other provisions of Maine law limiting who may qualify as a political party in the first instance." *Id.* at 38. Here, the Secretary's proposal to remove LPME from the CVR drop-down menu and reinstate it depending on its qualification status does not even serve any legitimate state interest, but rather increases the administrative burden on the Secretary, while significantly and unnecessarily impeding LPME's climb back from square zero to qualified status.

## CONCLUSION

For the foregoing reasons, and those stated in LPME's Response, should the Court enter final judgment in this matter, LPME respectfully requests that it include:

1. A declaration that 21-A M.R.S. § 306 is unconstitutional as applied to Plaintiffs;

2. A declaration that 21-A M.R.S. § 335(2) is unconstitutional as applied to Plaintiffs;

3. An Order directing the Secretary to recognize LPME as ballot-qualified for the 2024 election cycle; and

4. An Order directing the Secretary to maintain LPME as an option in the CRV's drop-down menu and on its voter enrollment cards.

DATED:  September 29, 2022            Respectfully submitted,

/s/Oliver B. Hall

OLIVER B. HALL
*Pro Hac Vice*
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
oliverhall@competitivedemocracy.org
(202) 248-9294

WILLIAM P. TEDARDS, JR.
*Pro Hac Vice*
1101 30th Street NW, Suite 500
Washington, DC 20007
BT@tedards.net
(202) 797-9135

JOHN H. BRANSON*
BRANSON LAW OFFICE, P.A.
482 Congress Street, Suite 304
P.O. Box 7526
Portland, Maine 04112-7526
(207) 780-8611
jbranson@bransonlawoffice.com

*Counsel for Plaintiffs*
**Counsel of Record*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this, the 29th day of September, 2022, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jonathan R. Bolton
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel. (207) 626-8800
jonathan.bolton@maine.gov

To my knowledge, there are no non-registered parties or attorneys participating in this case.

Dated:  September 29, 2022                                /s/ Oliver B. Hall
                                                                              Oliver B. Hall

                                                                              *Counsel for Plaintiffs*